IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEROME DUVALL, *et al.,*              *

     Plaintiffs,

                                  *

v.                                             Civil Action No. ELH-94-2541

                                  *

MARTIN O'MALLEY, *et al.,*              *

     Defendants.

                                  *

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## PLAINTIFFS' SUPPLEMENTAL STATUS REPORT

## I. ISSUES ON WHICH THE PARTIES AGREE

The parties appear to have no disagreement on the definition of the issue that was not resolved by the Partial Settlement Agreement ("PSA"): whether Defendants are violating the federal constitutional rights of detainees who have medical problems that place them at significantly increased risk of heat injury but are assigned to housing in which the temperature and humidity are not controlled, and are thereby exposed to an unreasonable risk of heat injury when the outside temperature reaches high levels.  As set forth below, there may also not be any significant disagreement between the parties on how that issue should be addressed; it is likely that, if the parties could get together to discuss the issue, the issue would be fully resolved.

## II.  ISSUES THAT REMAIN TO BE LITIGATED

A. <u>Procedure for Attempting to Resolve the Heat Issue</u>

Defendants in their initial status report indicate that they plan to take unspecified

1

additional measures to address the risk of heat injury for detainees confined in the Men's

Detention Center.[1]  Plaintiffs do not disagree that apparently there is "broad agreement in

principle on the remaining substantive issues."  In fact, Plaintiffs believe, as noted above, that a

relatively short negotiation involving the necessary decision-makers would be likely to fully

resolve the heat issue.  The problem, from Plaintiffs' perspective, is how to make negotiations

happen in a timely fashion.

Plaintiffs presented their current proposal to Defendants, revised to take into account

Defendants' previous objections, on April 25, 2011, and have yet to receive a response or a

counter-proposal.  The parties, as directed by the Court, met to discuss the issues on July 20,

2011.  Unfortunately, although the discussion was useful as a forum for the exchange of

information, no one at the meeting from Defendants' side appeared to have the authority to

negotiate an agreement.

For that reason, Plaintiffs suggest that the Court consider assigning a Magistrate Judge to

attempt mediation with the parties.  Several years ago, when the parties had reached an impasse

on the heat issue, Chief Magistrate Judge Grimm undertook mediation.  While that mediation

was not successful at the time, the progress made through the mediation process, and bringing

together the necessary decision-makers, ultimately led to partial agreement on the heat issue and

Defendants' agreement to sever the remaining heat issue from the issues resolved in the PSA.

Plaintiffs believe that a single mediation session, in which both parties were required to have

those persons with decision-making authority present, would be highly likely to resolve the heat

---

[1]  Since Plaintiffs do not know what specific measures to address the risk of heat injury
Defendants are referring to, Plaintiffs are unable to state whether they disagree with Defendants'
plans.

issue.  At the same time, Plaintiffs understand that it may be impossible to schedule mediation

with a Magistrate Judge in a timely fashion due to their workloads.  If it is not possible, Plaintiffs

urge the Court to order that the parties meet within the next 30 days, and that the participants at

the meeting have decision-making authority with regard to a settlement of the heat issue.

Plaintiffs further urge that the Court set a pre-trial conference in approximately 60 days, to be

canceled if the scheduled meeting of the parties is successful in producing a settlement.

B.  The Status of the Defendants' 2004 Motion to Terminate Injunctive Relief

Defendants, in their recent Status Report, also assert that the PSA, accepted by the Court

on April 10, 2010, did not resolve the issue of their April 23, 2004 motion to terminate

prospective relief pursuant to the provisions of 18 U.S.C. § 3626(b) of the Prison Litigation

Reform Act ("PLRA").  In fact, the PSA states that, if it is accepted by the Court, "all issues in

this case [with the exception of the heat issue] will be conditionally dismissed without prejudice

on the terms and conditions set forth below."  *See* PSA, Aug. 18, 2009 at ¶9 (Dkt. No. 374-2).

These issues include Plaintiffs' motion to reopen the Consent Decree of December 18, 2003 and

Defendants' motion for termination of relief.  This interpretation of the PSA is not only

supported by its language, but by its context.  At the time that the PSA was submitted to the

Court, the parties had agreed on a trial schedule to resolve both the motion to terminate and the

motion to reopen.  Defendants have never before this motion suggested to the Court that either

motion was unresolved.  In fact, as is apparent, the Defendants' position has been that any

renewed evidentiary proceedings, on any issue, should be further delayed.

Further, even if not resolved by the PSA, Defendants' 2004 motion to terminate relief

could not possibly affect Defendants' agreements under the PSA.  Under the PLRA, which

governs Defendants' motion, a defendant is entitled to move for the termination of "prospective

relief" under various circumstances.  *See* 18 U.S.C. § 3626(b).  Under 18 U.S.C. § 3626(g)(9),

however, "the term 'relief' [as used in §3626] means all relief in any form that may be granted or

approved by the court, and includes consent decrees but does not include private settlement

agreements."  The PSA qualifies as a "private settlement agreement" under PLRA.  *See* 18

U.S.C. § 3626(c)(2) ("Nothing in this section shall preclude parties from entering into a private

settlement agreement that does not comply with the limitations on relief set forth [in 18 U.S.C.

§ 3626(a)] if the terms of that agreement are not subject to court enforcement other than the

reinstatement of the civil proceeding that the agreement settled.").

Reinstatement of relief through a motion to reopen the Consent Decree is precisely what

the PSA provides in the event of serious non-compliance by Defendants.  *See* PSA at ¶¶ 123-125.

Accordingly, the PSA is not subject to the termination provisions of § 3626.  *See Rowe v. Jones,*

483 F.3d 791, 795 (11th Cir. 2007) (noting that termination motions pursuant to § 3626 are not

applicable to private settlement agreements); *Shultz v. Wells,* 73 Fed. Appx. 794, 795 (6th Cir.

2003) (holding that district court erred in granting a PLRA termination motion because the

agreement in question qualified as a private settlement agreement).

In essence, the PSA operates as a schedule for monitoring and discovery for Plaintiffs, at

the end of which they must file a new motion alleging violations of the PSA by Defendants if

they wish to pursue any part of their motion to reopen.  *See* PSA at ¶¶ 116-127.  Nothing in

PLRA is hostile to this type of agreement.  The Supreme Court recently dealt with a  related issue

under § 3626(a)(3) in *Brown v. Plata,* __U.S.__, 131 S. Ct. 1910 (2011).  In that case, state

officials utilized the restrictions on prisoner releases established in § 3626 to challenge a lower

court order.  Among these challenges were an assertion that the lower court erred by establishing

a cut-off date for the end of discovery, and a claim that the court had erred by refusing to

consider evidence after that cut-off date.  The Supreme Court rejected these challenges,

reasoning that "[o]rderly trial management may require discovery deadlines" and noting that the

defendants had in fact represented to the lower court that a cut-off of discovery before trial would

be appropriate.  *Id.* at 1935.  Thus, even if Defendants were correct in arguing that the PSA does

not resolve their motion for termination, the timing of resolution of that motion would be set by

the PSA, and so Defendants' motion has no practical continuing effect on the litigation.

C. Other Matters

Under the PSA, Plaintiffs may file a motion to reopen the issues in this case within two

years of April 10, 2010, the day on which the Court approved the PSA.  *See* PSA at ¶ 126.  In

addition, the issue of attorneys' fees for the work of Plaintiffs' counsel has not been resolved.

*See id.* at ¶ 128.

## III. HOUSEKEEPING MATTERS

Attached to this report, as requested by the Court, are the 1978 Consent Decree (Attach.

1), the 1993 Consolidated Consent Decree (Attach. 2) and the 2002 Consent Order (Attach. 3).

## CONCLUSION

For the above reasons, Plaintiffs request that the Court request that a Magistrate Judge

conduct a mediation meeting with the parties within 30 days of September 12, 2011.  If a

Magistrate Judge is not available within the requested time period, Plaintiffs request that the

Court order that representatives of the parties with decision-making authority meet within 30

days to determine whether agreement on the reserved heat injury issue can be reached.  Plaintiffs

further request that the Court also schedule a joint pre-trial conference within 60 days, to be

canceled if the parties are able to achieve a settlement before that time.


Respectfully submitted,

    /s/
Elizabeth Alexander
Law Offices of Elizabeth Alexander
1416 Holly St., NW
Washington, DC 20012
202-291-3774

Debra Gardner
Public Justice Center
One North Charles St., Ste.  200
Baltimore, MD 21201
410-645-9409

David C. Fathi*
National Prison Project
915 15th St., NW
Washington, DC 20005
202-393-4930

Counsel for Plaintiffs


September 12, 2011

* Not admitted in DC; practice limited to the federal courts