**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JEROME DUVALL, *et al.*, | * | |
| *Plaintiffs,* | * | |
| v. | * | Civil Case No. 1:94-CV-02541-ELH |
| LAWRENCE J. HOGAN, *et al.*, | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**SETTLEMENT AGREEMENT**

## I.   INTRODUCTION

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

2.     No person or entity is intended to be a third-party beneficiary of the provisions of this Settlement Agreement for purposes of any civil, criminal, or administrative action and, accordingly, no person or entity other than the parties may assert any claim or right as a beneficiary or protected class under this Settlement Agreement. This Settlement Agreement is not intended to impair or expand the right of any person or organization, other than the parties to this Settlement Agreement with respect to the relief expressly provided herein, to seek relief against Defendants, the Division of Pretrial Detention and Services ("DPDS"), or its officials, employees, or agents for their conduct. This Settlement Agreement does not alter legal standards, including those standards established by Maryland and federal law, governing claims of any persons or entities, although the standards established by this Settlement Agreement are applicable to the parties for the duration of this Settlement Agreement, as set forth herein.

## II.   DEFINITIONS

3.     "BCDC" shall mean the Baltimore City Detention Center and shall include the Women's Detention Center ("WDC"), the Jail Industries Building ("JI"), the Wyatt Building ("Wyatt"), and the Annex.

4.     "Clinician" shall mean a person licensed by the State of Maryland as a physician, physician assistant, or certified registered nurse practitioner who provides

1

**ATTACHMENT 1**

medical services within the scope of his or her licensure. This term does not include any persons providing mental health services as his or her primary job assignment.

5. "Defendants" shall mean the Governor of the State of Maryland, in his or her official capacity, the Secretary of Public Safety and Correctional Services, in his or her official capacity, and the Commissioner of Pretrial Detention and Services, acting in his or her official capacity through DPDS ("Commissioner").

6. "Effective Date" shall mean the date the Court enters this Settlement Agreement as an order of the Court.

7. "EMR" shall mean the electronic medical or mental health record or the portion of a plaintiff's medical or mental health record that is maintained in electronic form by DPDS.

8. "H1" shall mean a plaintiff who has been classified by a Clinician, psychiatrist, or psychiatric registered nurse practitioner as particularly susceptible to heat-related illness or injury because of a medical or mental health condition or use of specified prescription medication.

9. "Include" or "including" shall mean "include, but not limited to," or "including, but not limited to."

10. "Medical Professional" shall mean a Clinician, a registered nurse ("RN"), and/or a licensed practical nurse ("LPN") who provides medical services within the scope of his or her licensure.

11. "Medical record" shall mean the combined paper and electronic health record information for a plaintiff.

12. "Mental Health Practitioner" shall mean a person licensed by the State of Maryland as a psychiatrist, psychiatric registered nurse practitioner, psychologist, licensed clinical professional counselor, or licensed certified social worker-clinical, who provides mental health services within the scope of his or her licensure.

13. "Mental Health Professional" shall mean a Mental Health Practitioner, and/or an RN who provides mental health services within the scope of his or her licensure.

14. "Plaintiffs" shall mean persons, whether men or women, adults or juveniles, pretrial detainees or sentenced prisoners, who are now or will in the future be confined at BCDC.

15. "Promulgate and implement policy and procedure" shall mean to develop or to maintain, as appropriate, relevant policies and procedures, and to take reasonable steps to ensure that relevant staff follow such policy and procedure in practice.

### III.   SUBSTANTIVE PROVISIONS

### A.   Medical and Mental Health Care

16.    Unless otherwise stated, the provisions of this Section III apply to BCDC and to: (a) those portions of other facilities managed by DPDS that provide medical or mental health services to plaintiffs confined at BCDC, or to plaintiffs who would be confined at BCDC but for their need for those medical or mental health services, but only to the extent that such other facilities provide such medical or mental health services to those plaintiffs; and (b) solely for the purpose of temperature monitoring from May through September, those portions of other facilities managed by DPDS in which plaintiffs designated H1 are housed, if those plaintiffs would be housed at BCDC but for the H1 designation. At the time this Settlement Agreement is entered, the portions of such other facilities covered are: (i) the Inmate Mental Health Unit at Baltimore Central Booking and Intake Center ("BCBIC"); (ii) housing for persons with disabilities at BCBIC; (iii) medical and mental health intake screening at BCBIC; (iv) the infirmary at the Metropolitan Transition Center; (v) solely for the purpose of temperature monitoring from May 1 through September 30, areas of BCBIC housing plaintiffs designated H1; and (vi) the Special Needs Unit at BCBIC.

17.   **Intake and initiation of medication.**

a.    The Commissioner shall promulgate and implement policy and procedure to provide adequate medical and mental health intake screening to all plaintiffs accepted for admission at BCBIC. Such policy shall provide that initial medical and mental health screening, including rejection or acceptance for admission of the plaintiff, is performed by a RN within four hours of arrival at BCBIC, provided the plaintiff is present for all four of those hours. If the plaintiff is rejected for admission and later returns to BCBIC, a new four-hour period within which the initial medical and mental health screening must be performed shall commence.

b.    The Commissioner shall ensure that any plaintiff who reports during intake screening that he or she is currently prescribed medication for a medical condition, or who presents with an urgent medical need, shall receive a physical assessment by a Clinician within 24 hours of the intake screening, or sooner if clinically indicated.

c.    The Commissioner shall ensure that any plaintiff who is identified during intake screening as currently prescribed psychotropic medication (unless he or she receives a bridge order as provided in paragraph 25.b.) or as having an urgent mental health need, including a suicide risk, shall receive a mental health evaluation by a Mental

3

Health Practitioner within 24 hours of the intake screening, or sooner if clinically indicated.

d.  To address the needs of plaintiffs who, prior to being taken into custody, were prescribed medication that, if interrupted, would pose a risk of adversely affecting health, the Commissioner shall promulgate and implement policy and procedure to ensure that such plaintiffs receive such medications within 24 hours of the intake screening or subsequent encounter at which the plaintiff first reports such medications to a Medical Professional or Mental Health Professional, or sooner if clinically indicated, unless: (i) a Clinician determines that such continuation is not medically appropriate, including without limitation a determination that continuation is not medically appropriate pending verification of the reported prescription, provided that appropriate verification efforts shall be promptly undertaken; or (ii) despite reasonable efforts consistent with the gravity of the need for the medication, DPDS is unable to timely obtain the medication. The Commissioner shall promulgate and implement policy and procedure requiring reasonable efforts, consistent with the gravity of the need for the medication, to ensure that such plaintiffs are timely provided with the medication or a pharmaceutical equivalent.

e.  The intake screening, any physical or mental health assessment, and any decision regarding the continuation or non-continuation of reported prescription medication shall be documented in the plaintiff's medical record. If a medication is not continued, the clinical justification for that decision shall be documented in the plaintiff's medical record.

## 18.   Medical Plan of Care

a.  For purposes of this Settlement Agreement, a "Plan of Care" is a combined summary, evidenced by Clinician documentation in the medical record that includes: (a) a summary listing of major medical problems; and (b) a plan for treatment of such identified major medical problems, including, as applicable, medications, testing, records of past periodic chronic care appointments and access to orders for future periodic chronic care appointments, and access to orders for specialist referral. The Plan of Care shall be documented in the EMR. In the EMR existing as of the Effective Date, the Plan of Care shall be documented utilizing the Chart Summary template. See paragraph III.25.f. regarding the Mental Health Plan of Care.

4

b.    For purposes of this Settlement Agreement, an "Ongoing Condition" is a condition that requires ongoing care and that: (i) will not be resolved within a 30-day period; or (ii) constitutes a serious acute injury or illness that will require repeated follow-up (aside from routine medication administration) or has lasting significance for the plaintiff's future health care treatment. For those plaintiffs with one or more Ongoing Conditions, a Plan of Care shall be developed by one or more Clinicians, as appropriate, based on physical examination and the documented medical history of the plaintiff, as provided herein.

c.    The Commissioner shall promulgate and implement policy and procedure to ensure that initial diagnosis and identification of Ongoing Conditions, along with any elements of a Plan of Care that do not require development at chronic care clinics or through specialist referral, shall be conducted and entered into the EMR within seven days of the plaintiff's admission, or sooner if clinically indicated.

d.    During this initial diagnosis and identification process, a Clinician shall order that the plaintiff be enrolled in any chronic care clinics that are clinically indicated and recommend any specialty care that is clinically indicated. Any elements of the Plan of Care developed as a result of enrollment in chronic care clinics or specialty care shall be entered promptly in the EMR.

e.    If an Ongoing Condition is diagnosed and identified after the initial diagnosis and identification, the Plan of Care shall be promptly updated or created, as appropriate, to reflect such new diagnosis and identification.

f.    The Plan of Care shall be accessible to any Medical Professional or Mental Health Professional who is providing treatment, including diagnostic services, to a plaintiff, unless the need for emergency treatment precludes access at the plaintiff's location.

19.    **Medication Management and Testing**

a.    The Commissioner shall promulgate and implement policy and procedure to ensure that, unless clinically contra-indicated, medications not intended only for short-term use shall be renewed without interruption. Such policy shall ensure that a plaintiff prescribed such medication is seen by a Clinician in sufficient time before renewal would be required for the Clinician to determine

whether such medication should be renewed. Nothing in this Settlement Agreement is intended to, or shall, interfere with the exercise of appropriate clinical judgment by a Clinician to prescribe, or not prescribe, any medication.

b.     Medication Administration Records ("MARS") shall be completed by RNs or LPNs. If medication is not administered to the intended plaintiff on a particular occasion, the MARS shall allow a determination whether the medication was refused by the plaintiff or whether some other specified cause prevented administration. Any Medical Professional who makes entries in MARS shall document his or her entries as required by policy, including legibly signing entries, and noting the applicable professional licensure.

c.     The Commissioner shall promulgate and implement policy and procedure to ensure that, when a Clinician orders that vital signs or blood sugar results be documented, the documentation occurs as ordered and that these records are reviewed by a Clinician according to appropriate policy.

d.     The Commissioner may require plaintiffs who are prescribed medication that they are permitted to keep on their persons to initiate the process for refill of a prescription medication without having to first see a Medical Professional; provided, however, that DPDS shall have a process for expedited refills of keep-on-person medications that are prescribed for potentially urgent needs, such as rescue inhalers.

e.     The Commissioner shall promulgate and implement policy and procedure requiring a Clinician to respond to and document in a plaintiff's medical record the results of any ordered tests. Such policy and procedure shall require that a Clinician:

    i.      document review of critical or other serious abnormal values, and any actions taken as a result of that review, within 24 hours of the testing results becoming available, or sooner if clinically indicated, provided that review may be documented by a RN based on telephonic consultation with a Clinician;

    ii.     document review of all other ordered testing results within a reasonable timeframe.

f.     The Commissioner shall promulgate and implement policy and procedure to ensure that orders for laboratory testing, including but

not limited to cultures of potential Methicillin-Resistant Staphylococcus aureus ("MRSA") infections, are executed within timeframes consistent with the urgency of the test and the capacity of appropriately functioning laboratories to conduct such tests.

g.  The Commissioner shall promulgate and implement policy and procedure that defines those blood sugar and vital sign readings that are sufficiently abnormal to require notification of the plaintiff's Clinician; ensure that such policy and procedure for notification is implemented in practice; and further ensure that Medical Professionals notified of such readings take appropriate medical measures in response.

20.  **Interaction Between Medical and Custody**

a.  The Commissioner shall promulgate and implement policy and procedure for coordination between custody and medical staff to ensure that custody staff transport plaintiffs to emergency and scheduled internal and off-site appointments with Medical Professionals and Mental Health Professionals, for other specialty appointments, and for medical tests. Such policy and procedures shall also be promulgated and implemented ensuring timely rescheduling of missed appointments.

b.  The Commissioner shall promulgate and implement policy and procedure to ensure that when Medical Professionals or Mental Health Professionals direct medical accommodations (such as bottom bunk placement, access to a cane or crutches, specialized housing for medical or mental health purposes, or for purposes of protection from exposure to excessive heat), custody staff follow such directives. In the event that custody staff have concerns about the security implications of a particular medical accommodation, a mechanism shall exist to resolve such concerns promptly in a manner that does not threaten the health or safety of the plaintiff whose accommodation is at issue.

c.  The Commissioner shall ensure that Medical Professionals and Mental Health Professionals have access to current plaintiff location information for all plaintiffs on at least a daily basis.

d.  The Commissioner shall promulgate and implement policy and procedure to ensure coordination between custody staff and Medical Professionals when scheduling sick call and medication administration.

7

e.      The Commissioner shall promulgate and implement policy and procedure to ensure that plaintiffs classified as H1 are housed in temperature-controlled housing, to the extent sufficient temperature-controlled housing is available, from May 1 through September 30. Temperature-controlled housing includes those housing units of BCBIC, WDC, JI Dorms 600 and 700, and such other facilities as the parties agree constitute temperature-controlled housing because such units reliably control temperature to less than 88° Fahrenheit.

f.      In the event that the temperature control system of a housing unit used for H1 plaintiffs fails to maintain the temperature below 88° Fahrenheit, the Commissioner shall, to the extent possible and safe, transfer such H1 plaintiffs to other H1 housing. If insufficient H1 housing is available, appropriate Clinicians shall determine which HI plaintiffs are priorities for transfer to the available H1 housing. Respite in air-conditioned areas shall be provided for such plaintiffs, as well as other plaintiffs as required pursuant to Maryland Division of Pretrial Services, Directive 185.008 (2009).

g.      In the event that any housing unit designated as temperature-controlled fails to reliably control temperature to less than 88° Fahrenheit while plaintiffs designated as H1 are housed there, such housing unit shall no longer be considered temperature-controlled housing for purposes of this Settlement Agreement until the Commissioner provides evidence that such housing can now be expected to reliably control temperature to less than 88° Fahrenheit under comparable conditions in the future.

21.      **Accommodations for plaintiffs with disabilities**

a.      The Commissioner shall promulgate and implement policy and procedure ensuring the timely delivery of necessary medical supplies to plaintiffs with disabilities. The Commissioner shall promulgate and implement policy and procedure to ensure that plaintiffs with disabilities that require special accommodations are housed in locations that provide those accommodations, including, as applicable, toilets that can be used without staff assistance, accessible showers, and areas providing appropriate privacy and sanitation for bowel disimpaction.

b.      A staff member with appropriate training shall be designated to address concerns of plaintiffs with disabilities regarding accommodations for their disabilities and to assist in the resolution of

8

any security issues that may threaten provision of necessary accommodations.

c.   Plaintiffs with disabilities shall be provided with access to specialized medical services, such as dentists, mental health treatment, and off-site medical specialist treatment, on the same basis as plaintiffs without disabilities.

d.   The Commissioner shall promulgate and implement policy and procedure to use a vehicle with adaptations to make it suitable for the safe transportation of persons with mobility-related disabilities to transport plaintiffs with such disabilities, unless such vehicle is not available in an emergency situation.

22.   **Specialty Care/Consultation**

a.   The Commissioner shall promulgate and implement policy and procedure to ensure timely review of requests for routine, urgent and emergency specialty care.

b.   Such policy and procedure shall provide that plaintiffs are referred to specialists as medically necessary and that the process for review and approval of specialty consultations does not take more than 48 hours for urgent care and five business days for routine care.

c.   The Commissioner shall promulgate and implement policy and procedure to maintain a log documenting the date a Clinician requests approval of a specialist referral; the date utilization management takes action on the request; the outcome of the request; and whether the referral is to a specialist for the purpose of treatment or for the purpose of evaluation only.  Clinicians shall be given training regarding the documentation necessary to support a specialty request.

d.   The Commissioner shall promulgate and implement policy and procedure to ensure that, if applicable, each plaintiff's medical record contains documentation of requests for outside specialty care, including the date of the request, the date and nature of the response, the date any consultation is scheduled, the date of any consultation, and appropriate information, if any, regarding follow-up care.

e.   For the purpose of this Settlement Agreement, referrals for mental health services that are provided onsite at BCDC or BCBIC do not constitute specialist referrals.

23. **Sick Call**

    a.    Plaintiffs shall daily have the opportunity to request health care. Nursing staff shall make daily rounds to collect sick call requests from plaintiffs who have no access to a sick call box.

    b.    Requests for health care shall be triaged by RNs within 24 hours of receipt, with receipt measured from the time that the requests arrive at the site of triage following daily collection of sick call slips.

    c.    Plaintiffs whose requests include reports of clinical symptoms shall have a face-to-face (in person or via video conference, if clinically appropriate) encounter with a Medical Professional (not including an LPN) or Mental Health Professional within 48 hours (72 hours on weekends) of the receipt of the request by nursing staff at the site of triage, or sooner if clinically indicated.

    d.    Care at sick call and at subsequent follow-up appointments shall be as determined by appropriate Medical Professionals and/or Mental Health Professionals, in the exercise of appropriate clinical judgment, to meet the plaintiffs' medical and mental health needs.

24. **Medical Records**

    a.    The Commissioner shall promulgate and implement policy and procedure to ensure that the medical records of plaintiffs are available at sick call and other encounters with Medical Professionals and Mental Health Professionals. An on-site Medical Professional or Mental Health Professional who is providing treatment, including diagnostic services, to a plaintiff shall have access to both the EMR and any non-electronic portion of the medical record, unless the need for emergency treatment precludes access at the plaintiff's location.

25. **Mental Health Care**

    a.    The Commissioner shall promulgate and implement policy and procedure to ensure that appropriate Mental Health Professionals are provided to ensure timely and appropriate evaluations for medications and suicide risks.

    b.    When a request for a bridge order for psychotropic medications is made for a plaintiff, and the bridge order is approved, the plaintiff shall be seen within 14 days, or sooner if clinically indicated, for an in-person evaluation by a licensed psychiatrist or psychiatric registered nurse practitioner. In the event that a bridge order is denied,

the plaintiff shall be seen for an in-person evaluation by a licensed psychiatrist or psychiatric registered nurse practitioner within 24 hours of denial of medication.

c.   The Commissioner shall promulgate and implement policy and procedure to ensure that plaintiffs are evaluated by an appropriate Mental Health Practitioner within 24 hours of an urgent referral.

d.   Plaintiffs who are prescribed psychotropic medications shall be seen face-to-face by a licensed psychiatrist or psychiatric registered nurse practitioner at least every 90 days, or more frequently if clinically indicated.

e.   Plaintiffs who are suicidal, self-injurious, or otherwise in need of close monitoring or treatment shall be seen by appropriate Mental Health Practitioners as often as clinically indicated, for evaluation and recommendations for the management of such behavior. Nothing in this Settlement Agreement is intended to restrict the ability of RNs, consistent with the scope of their training and licensure, to participate in and assist with the treatment, evaluation, and management of such behavior.

f.   Mental Health Plan of Care

   i.   For purposes of this Settlement Agreement, a "Mental Health Plan of Care" is a combined summary, evidenced by psychiatrist, psychologist, or psychiatric registered nurse practitioner documentation in the medical record that includes: (a) a summary listing of major mental health problems; and (b) a plan for treatment of such identified major mental health problems, including, as applicable, medications, testing, and records of past periodic chronic care appointments and access to orders for future periodic chronic care appointments. The Mental Health Plan of Care shall be documented in the EMR. In the EMR existing as of the Effective Date, the Mental Health Plan of Care shall be documented utilizing the Chart Summary template. See paragraph III.18.a. regarding the Medical Plan of Care.

   ii.   The Commissioner shall promulgate and implement policy and procedure to ensure that all plaintiffs who are currently diagnosed in the BCDC medical record with mental health problems are enrolled in chronic care clinics. If clinically indicated, treatment plans shall be documented in the EMR

11

within 14 days of the plaintiff's admission. If a mental health condition requiring treatment is identified after intake, treatment plans shall be documented in the EMR within 14 days of the identification of the condition.

iii.    The Mental Health Plan of Care for a plaintiff with a major mental health problem, or who is prescribed medication for a mental illness, shall include scheduled follow-up with an appropriate Mental Health Practitioner as clinically indicated but no less frequently than every 90 days and shall be updated at each clinical encounter.

iv.    The Mental Health Plan of Care shall be accessible to any Medical Professional or Mental Health Professional who is providing treatment, including diagnostic services, to a plaintiff, unless the need for emergency treatment precludes access at the plaintiff's location.

g.    In those cases in which a plaintiff under treatment for mental health problems is returning to BCDC after having been confined in an outside institution and has been absent from BCDC for two weeks or more, the plaintiff will receive a new medical/mental health screening by a RN, and a new suicide risk assessment from a Mental Health Practitioner.

h.    Nothing in this Settlement Agreement is intended to restrict the ability of any Mental Health Professional to place a plaintiff on suicide restrictions pending review of that status by an appropriate Mental Health Practitioner.

## B.    Physical Plant

26.    The Commissioner shall promulgate and implement policy and procedure for:

a.    an effective housekeeping program that includes training and supervision of cleaning within the housing units;

b.    prevention of vermin infestation and the spread of disease-causing organisms (*e.g.*, salmonella and E. coli); and

c.    a system for maintenance and repair appropriate to maintain sanitation and safety and the functioning of necessary equipment and fixtures.

12

## IV.   GENERAL PROVISIONS

27.    The Commissioner shall appoint a compliance coordinator to oversee compliance with this Settlement Agreement and to serve as a point of contact regarding compliance activities.

28.    The Commissioner shall implement any reforms necessary to effectuate this Settlement Agreement.  The implementation of this Settlement Agreement will begin on the Effective Date; however, the parties recognize that some of the substantive provisions of this Settlement Agreement will reasonably require time to implement, and the parties agree that this Settlement Agreement shall be construed accordingly.

29.    The Commissioner's compliance with the provisions of Section III of this Settlement Agreement shall be determined by three monitors (one for medical provisions, one for mental health provisions, and one for physical plant provisions) ("Monitors").

30.    Both parties shall have the right to provide information to the Monitors on a confidential *ex parte* basis.

31.    The parties agree that assessing compliance with this Settlement Agreement shall not be more burdensome than necessary, and that costs of assessing compliance should be minimized so as to make additional funds available for compliance.  The parties agree that the Monitors shall have primary responsibility for assessing the compliance of the Commissioner with the substantive provisions of this Settlement Agreement, consistent with the responsibility of the parties' counsel to conduct necessary monitoring of compliance.

32.    The parties agree to the appointment of Michael Puisis, DO, for medical provisions, Raymond F. Patterson, M.D., D.F.A.P.A., for mental health provisions, and Mehdi Azimi, Ph.D., for physical plant provisions, as Monitors for reviewing compliance with the terms of this Settlement Agreement.  If any of the Monitors ceases to function as Monitor before the termination of this Settlement Agreement, the parties shall confer in an attempt to agree upon a successor monitor.  For purposes of this Settlement Agreement, a successor monitor's qualifications are to be considered based on:  (a) experience in the relevant discipline in a corrections setting; (b) professional qualifications (including licensing and certification); (c) potential biases that would affect his or her independence; and (d) reasonableness of fees and proposed monitoring plan.  These factors shall be considered in combination.

33.    In the event that a Monitor is no longer able or willing to perform his or her assigned duties and the parties are unable to agree on a successor monitor, Defendants shall identify names of at least two qualified successor monitor candidates.  Plaintiffs may select one of the candidates.  If Plaintiffs believe that neither of Defendants' proposed candidates sufficiently possesses the necessary qualities of neutrality and skill in assisting in

implementation of this Settlement Agreement, Plaintiffs may identify names of at least two qualified successor monitor candidates. Defendants may select one of the candidates, or submit the dispute to the Court. The Court shall select the substitute monitor from the list of candidates proposed by the parties. If, however, the Court finds none of the proposed candidates qualified, the Court shall make whatever further orders it deems necessary to identify an appropriate successor monitor.

34.    The Commissioner shall submit semi-annual compliance reports to the Monitors, with a copy to Plaintiffs' counsel. Reports shall be submitted by August 31 of each year, covering the first half of that calendar year, and by February 28 of each year, covering the second half of the prior calendar year. Each compliance report shall describe the status of compliance, including changes in that status, during the reporting period, and further steps anticipated during the next reporting period, to implement the terms of this Settlement Agreement. The first semi-annual compliance reports shall be due by August 31, 2016 covering the period from the Effective Date through June 30, 2016.

35.    The Commissioner shall maintain sufficient records to document that the requirements of this Settlement Agreement are being properly implemented and that Defendants have taken such actions as described in their compliance reports. Upon reasonable request, the Commissioner shall provide such records to the Monitors and Plaintiffs' counsel, or make such records available to the Monitors and Plaintiffs' counsel (as provided in paragraph 36) at reasonable times for inspection on site. Consistent with the provisions of paragraph 31, if the Monitors or Plaintiffs' counsel reasonably determine that such records are insufficient to carry out their respective responsibilities under this Settlement Agreement, they may make reasonable requests that the Commissioner provide or make available additional records, and the Commissioner shall provide or make available such additional records.

36.    Subject to paragraph 31:

   a.    Records or other documents provided to the Monitors shall also be provided to Plaintiffs; records or other documents made available to the Monitors shall, upon reasonable request, also be made available at reasonable times for inspection by Plaintiffs;

   b.    During the pendency of this Settlement Agreement, Plaintiffs' counsel shall have the right to conduct reasonable discovery, including physical access to BCDC and to those parts of other facilities covered by this Settlement Agreement, as stated in paragraph 16, by counsel and their agents, related to the Commissioner's compliance with the provisions of this Settlement Agreement;

   c.    Plaintiffs' counsel shall have the right to receive copies of or view medical and mental health records of class members in response to

14

requests that are reasonable in volume and in timing, and are relevant to provisions of this Settlement Agreement that are currently in force, without the necessity of individual medical releases. The Commissioner shall notify Plaintiffs' counsel when a plaintiff dies at BCDC, or at BCBIC following acceptance in the screening process, including plaintiffs who die following transfer to a treatment facility, and the Commissioner shall provide the medical and mental health records of such plaintiffs without the necessity of Plaintiffs' counsel requesting the records.

37.     If any disputes with respect to the reasonableness of requests for records under this Settlement Agreement cannot be resolved after reasonable efforts, such disputes shall be presented to, and decided by, the Court.

38.     The responsibilities of the Monitors shall be to:

    a.  Conduct on-site inspections of BCDC as necessary in their professional judgment to monitor the implementation of this Settlement Agreement, but no less frequently than once every six months for the first two years from the Effective Date.

    b.  Review evidence relating to compliance and assess the Commissioner's progress in meeting the requirements of this Settlement Agreement, including assessing any allegations of Plaintiffs regarding lack of compliance;

    c.  Provide technical assistance to the Commissioner to achieve compliance with the terms of this Settlement Agreement by informing the Commissioner what the Monitors consider necessary to achieve compliance, and how the Monitors believe such compliance might be achieved;

    d.  Issue reports as follows:

        i.  Within two months of the submission of a semi-annual compliance report by the Commissioner in which the Commissioner claims to have achieved substantial compliance with one or more substantive provisions of this Settlement Agreement, the appropriate Monitor shall issue a report stating whether the Commissioner has achieved substantial compliance with each applicable substantive provision of this Settlement Agreement at issue. If a Monitor reasonably requires additional time to issue such a report, he or she may extend that period of time by up to two additional months by providing notice to the parties and explaining the need for additional time;

    ii. Plaintiffs may, by February 28 and by August 31 of each year, make written allegations to a Monitor that the Commissioner has violated his or her obligations under one or more substantive provisions of this Settlement Agreement, and shall provide a copy of such allegations to the Commissioner. The appropriate Monitor shall, in his or her report issued under paragraph 38.d.i., state whether the Commissioner is in substantial compliance with the applicable substantive provision(s) of this Settlement Agreement;

    iii. Any report submitted pursuant to this paragraph shall be provided to the parties in draft form at least 15 days before being issued in final form.  If the Commissioner or Plaintiffs provide evidence or information in response to such draft before it is finalized, the Monitor may take such evidence or information into account in finalizing the report;

    iv. Final reports of the Monitors issued pursuant to this paragraph shall be provided to the parties.  Either party may file such a report with the Court;

    v. Reports of the Monitors shall identify all documents and other sources of information relied upon in their preparation.

39.    For purposes of this Settlement Agreement, "substantial compliance" means that the Commissioner has achieved:  (a) full compliance with the components of the relevant substantive provision of this Settlement Agreement; or (b) sufficient compliance with the components of the relevant substantive provision of this Settlement Agreement such as to remove significant threat of constitutional injury to the plaintiff class posed by any lack of compliance with the components of that substantive provision.  For purposes of this Settlement Agreement, a "substantive provision" means the requirements set forth in a single numbered paragraph in Section III of this Settlement Agreement.

40.    If and when the Commissioner achieves substantial compliance with a substantive provision of this Settlement Agreement, and maintains substantial compliance with such substantive provision for at least six months, such substantive provision of this Settlement Agreement shall be deemed satisfied. Following resolution of any disputes regarding whether substantial compliance has been achieved and maintained, including any applicable court review contemplated under this Settlement Agreement, such substantive provision shall no longer be subject to the terms of this Settlement Agreement, including monitoring; provided, however, that for purposes of paragraph 20.e., f., and g., such provision shall be deemed satisfied only if the Commissioner maintains substantial compliance for at least twelve calendar months.

41.   A finding of a Monitor that the Commissioner has achieved or has not yet achieved substantial compliance with a substantive provision of this Settlement Agreement may be challenged only according to the provisions in this paragraph.

a.   With respect to an initial finding of a Monitor that the Commissioner has achieved substantial compliance with a substantive provision of this Settlement Agreement, Plaintiffs must provide notice to Defendants and the Monitor of their disagreement with the Monitor's finding within 45 days of the issuance of the applicable report. Any such notice must identify the bases for the challenge with supporting evidence;

b.   With respect to a finding of a Monitor that the Commissioner has not achieved substantial compliance with a substantive provision of this Settlement Agreement, Defendants must provide notice to Plaintiffs and the Monitor of their disagreement with the Monitor's finding within 45 days of the issuance of the applicable report. Any such notice must identify the bases for the challenge with supporting evidence;

c.   With respect to a finding of a Monitor that the Commissioner has maintained substantial compliance with a substantive provision of this Settlement Agreement for at least six months, any challenge shall comply with subparagraph 41.e. Any such challenge may address the finding of substantial compliance during the most recent reporting period and/or, only if preserved by providing the notice required in subparagraph 41.a., any challenge to the initial finding of substantial compliance relating to the same substantive provision;

d.   With respect to a finding of a Monitor regarding substantial compliance with a substantive provision of this Settlement Agreement that Defendants contend should have been a finding of maintenance of substantial compliance for at least six months, any challenge shall comply with subparagraph 41.e. Any such challenge may address the finding regarding substantial compliance during the most recent reporting period and/or, only if preserved by providing the notice required in subparagraph 41.b., any challenge to an adverse finding regarding substantial compliance during the immediately prior reporting period, if applicable, relating to the same substantive provision;

e.   Unless the parties agree to extend the time, any challenge brought pursuant to subparagraphs 41.c. or 41.d. is waived if not made within 45 days of issuance of the applicable Monitor's report. Any such challenge shall be in a filing with the Court that shall: (1) attach a copy of the Monitor's report; (2) identify the bases for the challenge with supporting evidence; and (3) state the relief sought. Unless the parties agree to

17

extend the time, the other party shall file a response within 45 days. In any such proceedings, the challenging party shall bear the burden of proof to demonstrate that the Monitor's findings are incorrect;

f.   Upon request, the Commissioner shall provide to Plaintiffs within seven days any documents identified pursuant to paragraph 38.d.v. in a Monitor's report that have not previously been provided to Plaintiffs, unless such documents were not originally provided to the Monitor by the Commissioner, in which case the Monitor shall provide such documents to both parties within seven days.

42.   This Settlement Agreement shall terminate upon the earlier of:

a.   The Commissioner's achievement of substantial compliance with all substantive provisions of this Settlement Agreement in accord with paragraph 40; or

b.   Four years from the Effective Date unless Plaintiffs have previously obtained an order from the Court that is fully compliant with the requirements of 18 U.S.C. § 3626(a)(1) and that finds that the extension of one or more substantive provisions of this Settlement Agreement is necessary to correct an identified, ongoing constitutional violation, extends no further than necessary to correct that ongoing violation, and is the least intrusive means necessary to correct that ongoing violation. Notwithstanding the foregoing, if, as of four years from the Effective Date, Plaintiffs have a pending motion seeking an order extending one or more of the remaining substantive provisions of this Settlement Agreement, then termination shall not occur until the earlier of: (i) the denial of that motion; or (ii) four years and six months from the Effective Date.

43.   Upon termination, this action shall be promptly dismissed with prejudice.

44.   To allow time for the remedial measures set forth in this Settlement Agreement to be fully implemented, the parties shall not move to modify or terminate this Settlement Agreement for a period of four years from the Effective Date, except that this Settlement Agreement may be modified by agreement pursuant to paragraph 53.

45.   Failure by either party to enforce this entire Settlement Agreement or any provision thereof shall not be construed as a waiver of its right to enforce other deadlines or provisions of this Settlement Agreement.

46.   This Settlement Agreement shall be applicable to, and binding upon, all parties, their officers, agents, employees, assigns, and their successors in office.

47.   Attorney's Fees and Costs.

  a.  Defendants shall pay Plaintiffs $450,000 in full and final satisfaction of all claims of Plaintiffs for attorney's fees and costs in connection with this action prior to the Effective Date.

  b.  Plaintiffs and their counsel shall not be entitled to recover any attorney's fees or costs in connection with or as a result of this Settlement Agreement, its implementation, or any dispute concerning compliance with its provisions, except as expressly set forth in this paragraph 47.

  c.  Plaintiffs shall be entitled to reasonable fees and costs for monitoring compliance with the substantive provisions of this Settlement Agreement in an amount not to exceed $30,000 per year in the first and fourth years following the Effective Date and $20,000 per year in the second and third years following the Effective Date.

  d.  Except as set forth in subparagraphs a. and c., Plaintiffs shall not seek, or be entitled to recover, attorney's fees or costs for any monitoring or other activities related to this Settlement Agreement:   (i) unless they prevail in obtaining an order to enforce one or more substantive provision(s) of this Settlement Agreement; and (ii) in that case, any award shall be in accord with the Prison Litigation Reform Act.

  e.  Defendants shall pay the reasonable fees and expenses of the Monitors.

48.   Nothing in this Settlement Agreement affects in any way any individual claim brought by a member of the plaintiff class against Defendants or any other officer or agency of the State of Maryland.  Specifically, nothing in this Settlement Agreement: (a) bars or limits a member of the plaintiff class from bringing an individualized suit seeking damages or prospective relief under state and/or federal law; (b) bars or limits in any way Defendants or any other officer or agency in responding to any such suit; or (c) alters the requirements of the Prison Litigation Reform Act, including the exhaustion requirement, or other applicable law with respect to any such suit.  Only class counsel may seek to enforce the terms of this Settlement Agreement.  In the absence of a Court order, no reports, notes, or other work product of the Monitors may be used as evidence in any other proceeding or litigation, nor may the Monitors be called as witnesses in any other proceeding or litigation.

49.   The parties consent to the reservation and exercise of jurisdiction by the Court over all disputes between and among the parties arising out of this Settlement Agreement, subject to satisfaction of the following protocol:

a.    If, prior to any finding of substantial compliance by a Monitor, Plaintiffs assert that Defendants are not in compliance with one or more of the obligations under this Settlement Agreement, Plaintiffs shall provide Defendants with a written notice to that effect. The written notice of non-compliance shall set forth the specific substantive provisions of this Settlement Agreement with which Plaintiffs contend the Commissioner is not in compliance, and shall provide a summary of the factual basis for the alleged non-compliance with sufficient specificity to allow Defendants to understand the precise nature of the alleged non-compliance. Such summary need not identify specific class members unless such identification is necessary to allow Defendants to understand the precise nature of the alleged non-compliance;

b.    The notice required in subsection (a) shall be provided in writing to Defendants at least 30 days before the filing of any motion for enforcement by Plaintiffs, except in circumstances in which:

   i.   Plaintiffs' counsel did not have the factual information regarding the violation in time to provide notice 30 days before the expiration of this Settlement Agreement; or

   ii.  Plaintiffs' counsel believe in good faith, and after reasonable investigation, that their failure to file a motion for enforcement before the expiration of 30 days following notice to Defendants would subject class members to a substantial risk of irreparable injury. In such circumstances, Plaintiffs shall provide Defendants with as much advance notice as possible without subjecting class members to a substantial risk of irreparable injury from the delay in filing the motion for enforcement.

c.    In those circumstances in which Plaintiffs' counsel is actively reviewing evidence of alleged non-compliance with a specific substantive provision of this Settlement Agreement and is seriously discussing the filing of a motion for enforcement, Plaintiffs shall notify Defendants of the substantive provision or provisions involved, and provide Defendants with a description of the evidence of non-compliance that Plaintiffs are reviewing. Such notice need not identify specific class members unless such identification is necessary to allow Defendants to understand the precise nature of the alleged non-compliance.

d.    If, after a finding of substantial compliance by a Monitor as to a particular substantive provision, but before the provision has been terminated pursuant to paragraph 40, Plaintiffs' counsel reasonably

20

believe that there has been a new violation of the substantive provision at issue by the Commissioner that, if not addressed promptly, would subject class members to a substantial risk of irreparable injury, Plaintiffs' counsel may proceed in accordance with the terms of this paragraph 49, in parallel with any challenge brought pursuant to paragraph 41. However, if the substantive provision at issue is terminated pursuant to paragraph 40, any further proceedings relating to such provision shall be terminated.

50. The issue of liability has not been litigated. Defendants deny all the allegations in the complaint filed in this case. This Settlement Agreement does not constitute and shall not be construed or interpreted as an admission of wrongdoing or liability by any party.

51. The parties stipulate and jointly request that the Court find that, as of the Effective Date, this Settlement Agreement satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right of Plaintiffs.

52. The parties jointly request that the Court grant preliminary approval to this Settlement Agreement, provide notice to the class, and schedule a hearing regarding the appropriateness of final approval pursuant to Fed. R. Civ. P. 23(e). The parties further request that, following a fairness hearing, the Court give final approval to this Settlement Agreement; expressly adopt it as an order of the Court; and retain jurisdiction for the purpose of enforcing this Settlement Agreement.

53. This Settlement Agreement may be modified at any time upon written agreement of the parties and approval by the Court.

**[SIGNATURE PAGES FOLLOW]**

Elizabeth Alexander
Law Offices of Elizabeth Alexander
1416 Holly St., NW
Washington, DC 20012

Counsel for Plaintiff Class

Date: Nov. 13, 2015

David Fathi
National Prison Project of the ACLU
915 15th St. NW, 7th Floor
Washington, DC 20005

Counsel for Plaintiff Class

Date: Nov. 16, 2015

Debra Gardner
Public Justice Center
One North Charles St., Ste 200
Baltimore, MD 21201

Counsel for Plaintiff Class

Date: 11/13/15

For the Defendants:

Date: 11/18/15

Brenda M. Shell
Commissioner
Division of Pretrial Detention and Services


Date: Nov 19, 2015

Stuart M. Nathan
Assistant Attorney General and
    Principal Counsel
Department of Public Safety and
    Correctional Services
Attorney for Defendants




Approved


_____        Date: _____

United States District Judge