IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JEROME DUVALL, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civ. No.: MJM-94-2541 |
| v. | * | |
| | * | |
| WES MOORE, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiffs' Motion to Modify the Settlement Agreement ("the Agreement"), ECF No. 881, and Defendants' Motion to File a Sur-Reply, ECF No. 891. The motions are fully briefed and ripe for disposition. The Court heard oral argument on Plaintiffs' motion on August 20, 2024. No hearing is necessary for Defendants' motion. Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant both motions.

**I.   BACKGROUND**

This decades-long civil action concerns the health, welfare, and safety of pretrial detainees housed at the Baltimore City Booking and Intake Center ("BCBIC").[1] Plaintiffs are all persons who are now or will in the future be confined at BCBIC. *See* ECF No. 541-2, ¶ 14. The institutional Defendants have changed throughout the years and currently consist of Wes Moore, Governor of the State of Maryland; Carolyn J. Scruggs, Secretary of the Department of Public Safety and

---

[1] This case was previously assigned to the Honorable Frank A. Kaufman, the Honorable J. Frederick Motz, and the Honorable Ellen L. Hollander. The case was reassigned to the undersigned on January 4, 2024.

Correctional Services; and Cleveland C. Friday, Commissioner, Division of Pretrial Detention and Services, all sued in their official capacities. ECF No. 883 at 1.

The procedural history of this case is extensive, though mostly irrelevant to the issues at hand. The Court will recount the history necessary to explain its ruling. More detailed accounts of the case's history are outlined in Judge Hollander's Memorandum Opinions dated June 28, 2016, and May 20, 2021. *See Duvall v. O'Malley*, Civ. No. ELH-94-2541, 2016 WL 3523682, at *2–8 (D. Md. June 28, 2016) (ECF No. 575 at 1–16); *Duvall v. Hogan*, Civ. No. ELH-94-2541, 2021 WL 2042295, at *2–7 (D. Md. May 21, 2021) (ECF No. 723 at 1–12).

As relevant here, the parties entered the Settlement Agreement (the "Agreement") on or about November 19, 2015.[2] *See* ECF Nos. 541-2, 552. The parties then sought judicial approval of the Agreement, which this Court granted on June 28, 2016. *See* ECF Nos. 575, 577. In Paragraph 51 of the Agreement, the parties stipulated that "it is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right of Plaintiffs." ECF No. 541-2, ¶ 51. The parties jointly requested that the Court make these needs-narrowness-intrusiveness ("NNI") findings. *Id.* When it approved the Agreement, the Court found this stipulation sufficient to satisfy any applicable requirements of the Prison Litigation Reform Act ("PLRA") in 18 U.S.C. § 3626(a)(1)(A). ECF. No. 575 at 22.

---

[2] On June 23, 2016, the parties entered into a "First Amendment to the Settlement Agreement." ECF No. 574. The amendment became necessary after the closure of the Men's Detention Center and the anticipated closure of the Women's Detention Center, the Annex, and the Wyatt Building. *See* ECF Nos. 574, 723 at 2. The amendment extended provisions of the Agreement to pretrial detainees housed at BCBIC. *See* ECF No. 574. Unless otherwise indicated, references to the Agreement will incorporate the amendment.

### A. The Settlement Agreement

The Agreement includes ten substantive provisions and covers a class of detainees at BCBIC. ECF No. 541-2, ¶¶ 17–26. It addresses the provision medical and mental health care at the facility, "physical plant issues," the provision of accessible living and personal hygiene for persons with disabilities, and requirements for building maintenance, housekeeping, and sanitation. *Id.* (intake and initiation of medication, medical plan of care, medication management and testing, interaction between medical and custody, accommodations for plaintiffs with disabilities, specialty care/consultation, sick call, medical records, mental health care, and physical plant); *see* ECF No. 723 at 4.

The Agreement creates a structure aimed at helping Defendants achieve compliance with the substantive provisions of the Agreement. Part of this structure involves designation of three "Monitors" whose responsibilities include, but are not limited to, inspections of BCBIC to monitor the implementation of the Agreement and reviewing evidence relating to compliance with the Agreement.[3] ECF No. 541-2, ¶¶ 29, 38. The Agreement contains reporting requirements whereby the Commissioner must submit semi-annual compliance reports to the Monitors describing the status of compliance, among other things. *Id.* ¶ 34.

The Agreement provides that it "shall terminate" upon the earlier of either the Commissioner achieving "substantial compliance with all substantive provisions" or four years from the "Effective Date." *Id.* ¶ 42. "Effective Date" means "the date the Court enters this Settlement Agreement as an order of the Court." *Id.* ¶ 6. "Substantial compliance" means that the Commissioner has achieved either:

> (a) full compliance with the components of the relevant substantive provision of this Settlement Agreement; or (b) sufficient compliance with the components of the relevant substantive provision of this

---

[3] For a more in-depth discussion of the compliance structure, see ECF No. 723 at 5–6.

> Settlement Agreement such as to remove significant threat of constitutional injury to the plaintiff class posed by any lack of compliance with the components of that substantive provision.

*Id.* ¶ 39. When the Commissioner claims to have attained substantial compliance with any substantive provision, the Monitor must issue a report assessing that claim. *Id.* ¶ 38(d)(i). Further, "[i]f and when the Commissioner achieves substantial compliance with a substantive provision of [the] Agreement, and maintains substantial compliance with such substantive provision for at least six months, such substantive provision . . . shall be deemed satisfied." *Id.* ¶ 40.

As relevant here, the Agreement allows for extension beyond the original time period if "Plaintiffs have previously obtained an order from the Court that is fully compliant with 18 U.S.C. § 3626(a)(1) and that finds that the extension of one or more substantive provisions of [the] Agreement is necessary to correct an identified, ongoing constitutional violation, extends no further than necessary to correct that ongoing violation, and is the least intrusive means necessary to correct that ongoing violation." *Id.* ¶ 42.

The Agreement also includes a provision for attorney's fees and related costs. *Id.* ¶ 47. Paragraph 47(a) required Defendants to pay Plaintiffs for attorney's fees and costs connected to the action prior to the Agreement's Effective Date. *Id.* ¶ 47(a). Paragraph 47(b) states that Plaintiffs may only recover attorney's fees and costs as set forth in Paragraph 47. *Id.* ¶ 47(b). Under Paragraph 47(c), "Plaintiffs [are] entitled to reasonable fees and costs for monitoring and compliance with the substantive provisions of [the Agreement] in an amount not to exceed $30,000 per year in the first and fourth years following the Effective Date and $20,000 per year in the second and third years following the Effective Date." *Id.* ¶ 47(c). Paragraph 47(d) prevents Plaintiffs from seeking or recovering attorney's fees or costs for monitoring or other Agreement related activities unless Plaintiffs "prevail in obtaining an order to enforce one or more substantive provision(s) of [the Agreement,]" and, "in that case, the award must be in accord with the [PLRA]."

*Id.* ¶ 47(d). Lastly, Paragraph 47(e) requires Defendants to pay the reasonable fees and expenses of the Monitors. *Id.* ¶ 47(e).

The final three paragraphs of the Agreement are also relevant:

> 51. The parties stipulate and jointly request that the Court find that, as of the Effective Date, this Settlement Agreement satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right of Plaintiffs.
>
> 52. The parties jointly request that the Court grant preliminary approval to this Settlement Agreement, provide notice to the class, and schedule a hearing regarding the appropriateness of final approval pursuant to Fed. R. Civ. P. 23e. The parties further request that, following a fairness hearing, the Court give final approval to this Settlement Agreement; expressly adopt it as an order of the Court; and retain jurisdiction for the purpose of enforcing this Settlement Agreement.
>
> 53. This Settlement Agreement may be modified at any time upon written agreement of the parties and approval by the Court.

*Id.* ¶¶ 51–53.

Upon approval of the Agreement, the Court administratively closed the case. ECF No. 577.

### B. Relevant Modifications of the Agreement

By its terms, the Agreement was set to terminate in June 2020. ECF No. 541-2, ¶ 42b. However, Plaintiffs moved to reopen the case and enforce the Agreement in 2018. ECF Nos. 582, 583. The parties eventually agreed to extend the Agreement's expiration date, and the Court approved a new expiration date of June 22, 2022. ECF Nos. 640, 642.

On July 17, 2020, Plaintiffs filed another motion to enforce the Agreement. ECF No. 675. The motion was held in abeyance pending mediation. ECF No. 686. However, the parties were unable to resolve their dispute, *see* ECF No. 699, and Plaintiffs renewed their motion to enforce on November 20, 2020, ECF No. 702. In their renewed motion, Plaintiffs asserted that, in the prior

four years, Defendants failed to achieve substantial compliance with substantive provisions of the Agreement. ECF No. 702-1 at 1. Plaintiffs attributed this failure to a lack of incentive and sought various forms of relief, including, among other things, requiring Defendants to submit detailed plans and timelines for compliance, court-established deadlines for compliance, and a modification of the Agreement to extend the expiration date an additional two years. *Id.* at 1, 16–22. Plaintiffs argued that the Court "has plenary power to enforce the settlement agreement and to set deadlines for compliance," or alternatively, that the Court could modify the Agreement pursuant to Rule 60(b) of Federal Rule of Civil Procedure to impose deadlines for compliance and to extend the Agreement by two years. *Id.* at 16, 19–22.

Defendants opposed Plaintiffs' motion. ECF No. 709. In their opposition, as relevant here, Defendants argued that the motion was barred by the PLRA because, according to Defendants, Plaintiffs were seeking judicial enforcement of a private agreement, not a consent decree, and Plaintiffs could only seek prospective relief by demonstrating that the conditions in BCBIC violated their constitutional rights, which Plaintiffs failed to do. *Id.* at 10–26. Defendants also argued that Plaintiffs failed to establish that they were entitled to a modification of the Agreement under Rule 60(b). *Id.* at 26–31.

The Court ultimately granted Plaintiffs' motion, in part, and modified the Agreement to set a new expiration date of December 22, 2023. ECF Nos. 723, 724. In doing so, the Court determined that the Agreement is a consent decree and not a mere private settlement agreement. ECF No. 723 at 17–20. The Court next determined that it had the authority to enforce terms of the Agreement, as a consent decree, without finding an ongoing constitutional violation. *Id.* at 20–22. The Court then found that the requested enforcement mechanisms fell within the scope of the Agreement. *Id.* at 22–24. Finally, the Court granted Plaintiffs' request to modify the Agreement pursuant to Rule

6

60(b)(5) and the standards set out by the United States Supreme Court in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992). *Id.* at 24–30. The Court set the expiration date for December 22, 2023, finding this extension to be justified by, and suitably tailored to, the change in circumstances wrought by the COVID-19 pandemic and Defendants' unanticipated failure to achieve compliance. *Id.*

On May 17, 2022, the Court granted a stipulation submitted by the parties to extend the expiration of the Agreement to June 30, 2024, thereby giving the Defendants two more years to achieve substantial compliance. ECF Nos. 763, 764. On January 24, 2023, the Court granted a separate stipulation submitted by the parties to extend the monitoring fee provision in Paragraph 47(c) of the Agreement, entitling Plaintiffs to reasonable fees and costs for monitoring compliance in an amount not to exceed $20,000 in the fifth, sixth, and seventh years following the effective date, and $30,000 in the eighth year following the Effective Date. ECF No. 779, ¶ 5.

Finally, on August 21, 2024, following oral argument on Plaintiffs' pending motion to modify the Agreement, the Court entered an Order keeping the Agreement in force and effect while this motion remained pending. ECF No. 911.

## II.   DEFENDANTS' COMPLIANCE

Over the last eight years of monitoring, Defendants have achieved substantial compliance with only two of the ten substantive provisions of the Agreement. *See* ECF No. 723 at 8–9 (noting verified substantial compliance with Paragraph 26 of the Agreement) (citing ECF No. 720-3); ECF No. 911 (finding substantial compliance with Paragraph 23 of the Agreement). Defendants have made progress toward substantial compliance with all remaining substantive provisions but have continued to fall short. When the parties stipulated to continuing the Agreement, ECF No. 763, they did so under the impression that Defendants "shall achieve substantial compliance with each

7

substantive provision of the [Agreement] no later than June 30, 2024." ECF No. 763 at 1. June 30, 2024, has come and passed, and Defendants have yet to reach substantial compliance.

As of its last quarterly report, Defendants believe they are in substantial compliance with every provision of the Agreement. ECF No. 897 at 3 ("[T]he State believes in good faith that the medical and mental health care at BCBIC . . . exceed the terms of the Settlement Agreement[.]").

The following chart summarizes the positions from the State's Third Quarterly Report filed on July 30, 2024, ECF No. 897; the Mental Health Monitor's Report filed on April 22, 2024, ECF No. 875-2; and the most recent Medical Monitor's Report filed on October 10, 2023, ECF No. 880-11:[4]

| Provision Subparts | State's Report | Monitors' Reports |
|---|---|---|
| 17.a | Substantial Compliance | Partial compliance |
| 17.b | Substantial Compliance | Partial compliance |
| 17.c | Substantial Compliance | Noncompliance |
| 17.d | Substantial Compliance | Partial compliance |
| 17.e | Substantial Compliance | Partial compliance |
| 18.a-f | Substantial Compliance | Partial compliance |
| 19.a | Substantial Compliance | Partial compliance |
| 19.b | Substantial Compliance | Partial compliance |
| 19.c | Substantial Compliance | Noncompliance |
| 19.d | Substantial Compliance | Partial compliance |
| 19.e | Substantial Compliance | Noncompliance |
| 19.f | Substantial Compliance | Noncompliance |
| 19.g | Substantial Compliance | Noncompliance |
| 20.a | Substantial Compliance | Partial compliance |
| 20.b | Substantial Compliance | Partial compliance |
| 20.c | Substantial Compliance | Substantial compliance |
| 20.d | Substantial Compliance | Partial compliance |
| 20.e | Substantial Compliance | Substantial compliance |
| 20.f | Substantial Compliance | Substantial compliance |
| 20.g | Substantial Compliance | Substantial compliance |
| 21.a-c | Substantial Compliance | Partial compliance |

---

[4] Paragraphs 23 and 26 are omitted as Defendants have achieved substantial compliance with those provisions.

| | | |
|---|---|---|
| 21.d | Substantial Compliance | Substantial compliance |
| 22.a | Substantial Compliance | Partial compliance |
| 22.b-d | Substantial Compliance | Noncompliance |
| 22.e | Substantial Compliance | Not evaluated |
| 24.a | Substantial Compliance | Partial compliance |
| 25.a | Substantial Compliance | Partial compliance |
| 25.b | Substantial Compliance | Partial compliance |
| 25.c | Substantial Compliance | Substantial compliance |
| 25.d | Substantial Compliance | Substantial compliance |
| 25.e | Substantial Compliance | Substantial compliance |
| 25.f-i | Substantial Compliance | Partial compliance |
| 25.f-ii | Substantial Compliance | Substantial compliance |
| 25.f-iii | Substantial Compliance | Substantial compliance |
| 25.f-iv | Substantial Compliance | Partial compliance |
| 25.g | Substantial Compliance | Substantial compliance |
| 25.h | Substantial Compliance | Substantial compliance |

While Defendants believe themselves to be in substantial compliance with the remaining eight substantive provisions, the most recent Monitor reports tell a different story. According to the Monitor reports, out of the remaining 46 subparts of the substantive provisions, Defendants show substantial compliance with only 12 of the subparts, partial compliance with another 25, and noncompliance with eight, with one not evaluated. While it is helpful to consider the subparts of the substantive provisions in making an overall assessment of Defendants' level of compliance, the Agreement provides that each substantive provision is to be evaluated in its entirety, requiring substantial compliance with each subpart to achieve substantial compliance with the relevant provision. *See* ECF No. 541-2, ¶ 39. In consideration of the Monitors' most recent reports, the Court does not find Defendants to be in compliance with the Agreement.

### III. PLAINTIFF'S MOTION TO MODIFY THE SETTLEMENT AGREEMENT

In their pending motion to modify the Agreement, Plaintiffs seek a modification of the expiration date of the Agreement to June 30, 2026, the imposition of interim deadlines, and an

extension of the monitoring fee provision. ECF Nos. 881 at 1–2, 881-1 at 19. Plaintiffs seek this modification due to Defendants' failure to achieve substantial compliance with the substantive provisions over the last eight years. Plaintiffs allege that Defendants have only complied with one of the ten substantive provisions.[5] Plaintiffs argue that this Court may use its "inherent authority to modify a consent decree or other injunction[,]" *Thompson v. U.S. Dep't Of Hous. & Urb. Dev.*, 404 F.3d 821, 826 (4th Cir. 2005), codified in Federal Rule of Civil Procedure 60(b)(5) to modify the Agreement by extending its end date. *See generally*, ECF No. 881-1. Defendants argue that to extend the Agreement, Plaintiffs must comply with the NNI provisions of the PLRA, codified at 18 U.S.C. § 3626, and that Plaintiff fail to address, and cannot meet, this standard. *See generally* ECF No. 883. This includes Defendants' first-time argument that the NNI findings require this Court to identify an ongoing constitutional violation before extending the Agreement. *Id.* at 10–11. Defendants also argue that they are in compliance with the Agreement. *Id.* at 5.

Rule 60(b)(5) permits modification of a consent decree when "applying it prospectively is no longer equitable[.]" Fed. R. Civ. P. 60(b)(5); *see also Rufo*, 502 U.S. at 383; *Horne v. Flores*, 557 U.S. 433, 447 (2009). "[T]he Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne*, 557 U.S. at 447 (quoting *Rufo,* 502 U.S. at 384).

"Rule 60(b)(5) serves a particularly important function in . . . 'institutional reform litigation.'" *Id.* (quoting *Rufo*, 502 U.S. at 380). For this reason, "a district court should exercise flexibility in considering requests for modification of an institutional reform consent decree . . . ." *Rufo*, 502 U.S. at 383. *See also Thompson*, 404 F.3d at 827 ("The rule of broad discretion in public

---

[5] Following the August 20, 2024 hearing, this Court entered an Order recognizing substantial compliance with a second substantive provision. ECF No. 911.

10

interest cases is designed to give the district court flexibility in deciding exactly how the numerous conditions of a complex consent decree are to be implemented in practice. In overseeing broad institutional reform litigation, the district court becomes in many ways more like a manager or policy planner than a judge.") (quoting *Navarro–Ayala v. Hernandez–Colon,* 951 F.2d 1325, 1338 (1st Cir. 1991)).

The party seeking modification "bears the burden of establishing that changed circumstances warrant relief, . . . but once a party carries this burden," the court must modify the consent decree "in light of such changes." *Horne*, 557 U.S. at 447 (citations omitted). In doing so, "the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383. "A court should do no more, for a consent decree is a final judgment that may be reopened only to the extent that equity requires." *Id.* at 391. This standard "applies when a party seeks modification of a term of a consent decree that arguably relates to the vindication of a constitutional right." *Id.* at 383 n.7.

In institutional reform litigation, modification of a consent decree to extend the period of enforcement may be justified by a significant and unanticipated degree of noncompliance with its terms. *See Thompson*, 404 F.3d at 828–29 (affirming modification to extend the period of consent decree where plaintiffs did not anticipate "the exceptional magnitude" of some defendants' noncompliance); *David C. v. Leavitt*, 242 F.3d 1206, 1213 (10th Cir. 2001) (affirming modification of consent decree to extend enforcement period due to defendant's significant and unanticipated noncompliance with its terms); *Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 284 (3d Cir. 2001) ("Courts have extended a decree or parts of a decree when a change in circumstances thwarted the basic purpose and intent of the decree, . . . when there had been 'pervasive violations' of the decree by one party, . . . and when one party was in substantial non-

compliance with the decree[.]") (citations omitted); *Jud. Watch, Inc. v. Adams*, 485 F. Supp. 3d 831, 841, 843 (E.D. Ky. 2020) (granting motion to modify consent decree by extending its termination date after stagnant progress toward satisfying one of the main purposes of the consent decree). *See also Rosie D. v. Baker*, No. CV 01-30199-RGS, 2021 WL 2516082, at *6–7 (D. Mass. June 19, 2021) (denying motion to modify and granting motion to terminate based on "persuasive evidence that [defendants] have substantially complied with the requirements" of the injunction); *United States v. New Jersey*, No. CV2100091KSHCLW, 2017 WL 11741438, at *5 (D.N.J. June 30, 2017) (applying *Holland* and denying extension of consent decree because the parties fulfilled their obligations and extending it would go "well beyond what the decree envisioned").

As with Plaintiffs' prior motion to modify the Agreement, the pending motion establishes a significant enough change in circumstances to justify modifying the Agreement to extend its expiration date and establish interim deadlines. Eight years after entering the Agreement, and four years after its initial expiration date, Defendants have achieved substantial compliance with only two out of the Agreement's ten substantive provisions. At the time they entered the Agreement, the parties stipulated that compliance with its substantive provisions was necessary to correct violations of Plaintiffs' federal rights. *See* ECF No. 541-2, ¶ 51. At that time, Plaintiffs did not anticipate that Defendants would, eight years later, fall so far short of substantial compliance with the Agreement's substantive terms. This "exceptional magnitude" of noncompliance warrants modification of the Agreement to extend the period of judicial enforcement. *Thompson*, 404 F.3d at 828–29.

The Court also finds modification of the expiration date by the requested two years, coupled with the requested implementation of interim deadlines, to be suitably tailored to ensure that Defendants increase the pace of their progress toward compliance with the Agreement. Again,

12

it has taken eight years for Defendants to achieve substantial compliance with two out of the ten substantive provisions of the Agreement. I note that Defendants' have made progress toward compliance with other provisions, and I recognize that their compliance efforts were impeded to some extent by the unforeseen advent the COVID-19 pandemic in 2020 and 2021. Notwithstanding, considered in light of the terms to which Defendants committed themselves in 2016, their progress toward compliance has been unacceptably slow. A two-year extension of the enforcement period will give Defendants ample time to achieve full compliance. A commensurate extension of the monitoring fee provision and the setting of interim deadlines will give Defendants necessary incentives to meet this goal. If Defendants demonstrate full compliance before the Agreement expires, then the monitoring and enforcement period may conclude at that point.

In opposition to Plaintiffs' motion, Defendants, for the first time, argue that this Court must make new NNI findings required under the PLRA to extend the Agreement and that the Plaintiffs cannot meet this standard. ECF No. 883 at 11–18. Defendants argue that extending the Agreement first requires this Court to determine that there is an ongoing constitutional violation and then that this Court must make NNI findings based on that constitutional violation. *Id.* This standard cannot be met, according to Defendants, because there is no ongoing constitutional violation. *Id.* at 11–13. Defendants further argue that the law of the case doctrine cannot justify application of incorrect legal standards. *Id.* at 18–21.

The Court agrees with Plaintiffs that Defendants' arguments are foreclosed by the law of the case and may also be rejected on their merits.

"The PLRA provides that 'in any civil action with respect to prison conditions . . . [t]he court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and

is the least intrusive means necessary to correct the violation of the Federal right.'" *Porter v. Clarke*, 923 F.3d 348, 366 (4th Cir. 2019), *as amended* (May 6, 2019) (quoting 18 U.S.C. § 3626(a)(1)) (omission and alteration in *Porter*). This provision applies to civil actions brought by pretrial detainees challenging conditions of their detention. *See* 18 U.S.C. § 3626(g)(3) (defining "prisoner" to include "any person subject to incarceration, detention, or admission to any facility who is accused of . . . violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program"); *id.* § 3626(g)(5) (defining "prison" to include "any Federal, State, or local facility that incarcerates or detains juveniles or adults accused of . . . violations of criminal law"). In any such civil action "in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener" either "(i) 2 years after the date the court granted or approved the prospective relief; [or] (ii) 1 year after the date the court has entered an order denying termination of prospective relief under this paragraph . . . ." *Id.* § 3626(b)(1)(A).[6] "Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." *Id.* § 3626(b)(3).

The Court does not construe Plaintiffs' motion as seeking "prospective relief" as contemplated in the foregoing provisions of the PLRA, but instead construes the request as one for modification of the prospective relief previously granted. The consent decree entered by the Court on June 28, 2016, was "narrowly drawn, extend[ed] no further than necessary to correct" violations of federal rights, and was "the least intrusive means necessary to correct" those violations. *Id.* §

---

[6] Section § 3626(b)(1)(A)(iii) does not apply here because the consent decree was not issued on or before the PLRA's date of enactment.

14

3626(a)(1); *see also* ECF No. 575 at 22; ECF No. 577, ¶ 3. Plaintiffs sought modification of the Agreement to extend the monitoring and enforcement period before that period expired. ECF No. 881. Defendants have not since moved to terminate the Agreement under 18 U.S.C. § 3626(b)(1). Thus, the Court does not find that the modifications Plaintiffs seek require new findings that prospective relief remains necessary to correct current and ongoing violations of federal rights or that it extends no further than necessary to correct those violations and that it is narrowly drawn and the least intrusive means to do so.

In its previous Order modifying the Agreement to extend the period of enforcement and monitoring, the Court did not make any such new findings, ECF Nos. 723, 724, 763, 764, and the Court does not find that the PLRA requires it to do so now.

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (internal quotation marks omitted); *see also Noel v. PACCAR Fin. Corp.*, 568 F. Supp. 3d 558 (D. Md. 2021) (quoting *Musacchio v. United States*, 577 U.S. 237, 244-45 (2016)); *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (holding that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again") (citations omitted). The law of the case doctrine is not absolute; a court may depart from it in three circumstances, "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *TFWS*, 572 F.3d at 191 (citation omitted). None of these exceptions apply here. Specifically, I find no clear error in the Court's prior decision to

15

modify the Agreement without finding any ongoing constitutional violation or finding that the modification satisfied the NNI standard. The Court found that modifying the Agreement to extend its enforcement period was suitable and appropriate under the principles articulated in *Rufo*, and I find that application of the same principles now would not work a manifest injustice.

## IV.     DEFENDANT'S MOTION TO FILE A SURREPLY

Defendants filed a motion for leave to file a surreply, ECF No. 891, to Plaintiffs' reply, ECF No. 885. Unless otherwise ordered by the Court, parties are not permitted to file surreply memoranda. Loc. R. 105.2(a) (D. Md. 2023). Surreplies "may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Adams v. Am. Fed'n of State*, 167 F. Supp. 3d 730, 737 (D. Md. 2016) (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)). Defendants argue that their surreply is justified because they seek to respond to Plaintiffs' discussion of the interplay between Rule 60(b) and the requirements of the PLRA. ECF No. 891. Because the surreply is Defendants' first opportunity to respond to Plaintiffs' arguments regarding the PLRA, the motion is granted, and the surreply was taken into consideration herein.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion for Leave to File Sur-Reply and Plaintiffs' Motion to Modify the Settlement Agreement will be GRANTED.

A separate Order will follow.

| | |
|---|---|
| 10/18/24 | /S/ |
| Date | Matthew J. Maddox |
| | United States District Judge |